**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CHARLES WESLEY JOHNSON,                                                                    PLAINTIFF
ADC #111384

v.                                              5:15CV00116-BRW-JTK

WENDY KELLY, et al.                                                                         DEFENDANTS

## <u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>

### <u>INSTRUCTIONS</u>

The following recommended disposition has been sent to United States District Judge Billy

Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing

is granted) was not offered at the hearing before the Magistrate Judge.

3.        The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

I.      **Introduction**

Plaintiff Charles Johnson is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC).  He filed this pro se action pursuant to 42 U.S.C. § 1983 against Defendants, alleging inadequate medical care and treatment while incarcerated at the Delta Regional Unit (Doc. No. 2). Defendants Kelly, Griffin, and Gibson were dismissed by Orders dated April 30, 2015, and August 18, 2015 (Doc. Nos. 7, 54).  The remaining defendants are William Kirk, the Medical Administrator for Correct Care Solutions (CCS), and Connie Hubbard, an APN for CCS.

This matter is before the Court on the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 74-76).  Plaintiff responded to the Motion (Doc. Nos. 79-80), and Defendants filed a Reply (Doc. No. 81).

II.     **Complaint**

Plaintiff began to have problems with his lower right foot and leg in November, 2014, and was referred to Defendant Hubbard, the only medical provider at the Unit. (Doc. No. 2, p. 3) She treated him on several occasions in November, 2014 and December, 2014, by ordering x-rays,

2

antibiotics, steroids, and no duty lay-ins.  (Id.)  However, Plaintiff's foot continued to swell and he requested to see a physician.  (Id.)  In January, Hubbard approved Plaintiff to see a rheumatologist, but as of March 20, 2015, Plaintiff had not seen that doctor or any other doctor.  (Id., p. 5)  Despite numerous medical requests, Defendant Kirk took no actions to help Plaintiff with his problems, finding that Plaintiff was being adequately treated.  (Id.)  Defendant Hubbard also failed to provide him adequate pain medication, other than Tramadol, and Plaintiff continues to suffer from pain and swelling of his leg and foot.  (Id., p. 7)  Plaintiff saw Hubbard again in March, 2015, at which time she ordered additional antibiotics, Indocin, and extra strength Tylenol.  (Id., p. 9)  When Plaintiff asked to speak with Defendant Kirk about his issue, he was told to "put it on paper."  (Id.)  Plaintiff complains that he was sent for an abdominal ultrasound on April 2, 2015, and that when he asked about it, Defendant Kirk said it was to determine if Plaintiff had a pancreas abnormality which would contribute to his blood sugar issues.  (Id., p. 11)  However, Plaintiff's appointment with the rheumatologist, to determine his leg issue, was not scheduled until May.  (Id.)

## III.    Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot

simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." <u>Id</u>.

### A.      Exhaustion

Defendants first state that Plaintiff's complaints should be limited to his treatment during the time period between December, 2014, and January, 2015, because the three grievances he filed related to the medical care he received during that time.  In those grievances, Plaintiff complained about the swelling and pain of his right foot and leg and the lack of appropriate treatment by Defendant Hubbard.  (Doc. No. 76-4, pp. 2-10)

The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), <u>unconst'l on other grounds</u>, <u>Siggers-El v. Barlow</u>, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The purpose of the exhaustion requirement is to provide prison officials with notice of an incident or situation and the opportunity to resolve the issue with the prisoner, thus alleviating the necessity of court litigation.  Woodford v. Ngo, 548 U.S. 81, 88 (2006).  In incidents like this, where an inmate complains about the continuing course of a medical treatment regarding a particular condition, the Court does not believe that the inmate should be required to continuously file grievances to exhaust the issue through its resolution.  Rather, the fact that Plaintiff filed at least one grievance, naming the individuals at issue in this lawsuit and his complaints over his treatment,

was sufficient to alert the prison officials of the issue, and thus, comply with the purpose of the statute.   Therefore, the Court disagrees with the Defendants and finds that Plaintiff sufficiently exhausted his allegations against Defendants with respect to his medical care from December, 2014, until he left the Delta Regional Unit in September, 2015.

**B.     Deliberate Indifference**

**1.     Defendants' Motion**

Defendants state that Plaintiff cannot provide any evidence that they acted with deliberate indifference to his serious medical needs.   Rather, his complaint concerns the type of medical care he received, which does not support a constitutional claim for relief.   See Dulany, 132 F.3d at 1240. In support of their position, they present declarations of Defendant Hubbard and Dr. Jeffrey Stieve, the Regional Medical Director for CCS, together with copies of Plaintiff's medical records, to show that Plaintiff was continuously treated appropriately for his medical condition.   According to Hubbard's declaration, she received bachelor's and master's degrees in nursing in 1977 and 1984, and is employed as an APN at the Delta Regional Unit.   (Doc. No. 76-2, p. 1) Her job entails examining and assessing patients; ordering medications, restrictions and treatment plans; and preparing consultations requests as indicated for a patient's care and treatment.   (Id.)

According to a chronology of Plaintiff's medical treatment, as set forth in his medical records (Doc. No. 76-1) and summarized in Hubbard's declaration, Hubbard first examined Plaintiff on November 13, 2014, for complaints of right foot and lower leg pain.   (Doc. No. 76-2, p. 1)  Although Plaintiff had prominent small capillaries, he had no broken veins, no discoloration and no edema, and Hubbard did not see anything which required medical intervention at the time.   (Id.)  She next saw Plaintiff on December 2, 2014, for complaints of a burning sensation and pain in his right lower

leg. (<u>Id</u>.)  She noted he had superficial veins and a bulging area when he stood, for which she prescribed an ace wrap. (<u>Id</u>.)  Plaintiff returned to the clinic on December 8, 2014 with complaints of right foot swelling, stating he had worn the ace wrap and had been taking medication. (<u>Id</u>.) Defendant Hubbard made an objective finding of edema of the ankles, and ordered an x-ray and lab work. (<u>Id</u>.)  The radiology report indicated no fracture, dislocation or soft tissue swelling. (<u>Id</u>., p. 2)

Plaintiff returned to the clinic on December 18, 2014, with continued complaints of swelling and pain and no known trauma. (<u>Id</u>.)  Defendant Hubbard noted swelling of the ankles and dorsum of the foot and prescribed steroids. (<u>Id</u>.)  Defendant reviewed Plaintiff's lab results on December 31, 2014, which indicated he did not have gout, strep, or muscle inflammation. (<u>Id</u>.)  However, his rheumatoid arthritis was above normal and his anti-nuclear antibodies were abnormal, indicating a general inflammatory issue. (<u>Id</u>.)  This condition is treated with anti-inflammatory medications, so Defendant ordered an injection of an anti-inflammatory glucocorticoid and prescribed an anti-inflammatory for him to take daily for both swelling and pain. (<u>Id</u>.) She also restricted him from work, sports and yard call for two weeks. (<u>Id</u>.) Believing he should see a specialist, Hubbard completed a consultation request on January 10, 2015, requesting that Plaintiff be evaluated by a rheumatologist. (<u>Id</u>.) Hubbard does not schedule the appointments, and apparently the original appointment was cancelled by the University of Arkansas for Medical Sciences (UAMS), and Plaintiff did not see a specialist until May, 2015. (<u>Id</u>.)

Plaintiff returned to the clinic on January 15, 2015, with continued complaints of pain and swelling, stating that the swelling would decrease when he propped up his foot, but return when he stood. (<u>Id</u>., p. 3) Hubbard made an objective finding of ankle swelling and erythema, and

6

determined Plaintiff suffered from cellulitis of the right foot. (Id.) Noting his pending consultation with a rheumatologist, she prescribed an antibiotic, Tramadol for pain, and noted he should continue to lay in from physical activities and stay off his leg.  (Id.)  Plaintiff returned on January 26, 2015 with redness and swelling of the lower right leg and foot. (Id.)  Hubbard prescribed a new antibiotic and ordered an immediate injection of another glucocorticoid. (Id.)  She also continued his no duty/no sports/no yard call prescription through February 9, 2015.  (Id.)

Hubbard saw Plaintiff three times in February.  On February 2, 2015, the redness stopped at his sock line, but he continued to show erythema of the lower right leg and edema of the foot. (Id.) Hubbard noted that his rheumatology consultation had been approved and she renewed the Tramadol prescription for pain.  (Id.) She also counseled Plaintiff to keep his foot elevated as much as possible.  (Id.)  On February 11, 2015, Plaintiff still showed erythema of the right lower leg but less edema.  (Id., p. 4) Hubbard ordered an antibiotic injection daily for three days, together with a new oral antibiotic, and continued his other restrictions. (Id.)  Plaintiff continued to show signs of edema and erythema on February 24, 2015, but a test ruled out deep vein thrombosis.  (Id., p. 4) Hubbard ordered lab tests for inflammation and an ultrasound to rule out a blood clot. (Id.) She also prescribed compression stockings to reduce the edema, and renewed his Tramadol. (Id.)

The ultrasound tests showed no deep vein thrombosis and the lab tests were normal.  (Id.) In April and May, 2015, Hubbard continued to monitor Plaintiff by trying different medications and prescribing larger compression stockings. (Id.) She arranged for him to be transferred to the Ouachita Unit hospital where he was placed on IV antibiotics for five days. (Id.)  The physician at the Unit, Dr. McKinney, determined Plaintiff had chronic cellulitis from stasis edema. (Id.)  When Plaintiff was released from the hospital, the Dr. McKinney assessed him as having peripheral

neuropathy and chronic lymphedema (swelling). (Id., p. 5)   He also recommended no prolonged standing, wearing compression stockings, and taking Meloxicam and Neurontin, together with a diuretic. (Id.) Hubbard ordered these medications and re-ordered Tramadol.  (Id.)  While in the hospital, Plaintiff's leg was elevated, and his swelling decreased to what he felt it was like back in November, 2014.  (Id.)  He saw the rheumatologist in May, who noted the ankle swelling, but focused on Plaintiff's knees and recommended a steroid injection and a lubricant-type injection. (Id.)

Based on this course of treatment, Hubbard stated that Plaintiff received appropriate and satisfactory care, explaining that she first prescribed steroids, antibiotics, pain medications and then compression stockings to help with relief of his symptoms, and continued to instruct him to keep his leg elevated.  (Id., p. 6)  The standard of care she followed was to rule out other potential conditions while working to treat Plaintiff's symptoms. (Id.) The medications she prescribed were intended to reduce the swelling and pain, and elevation of his leg proved effective. (Id.)

Plaintiff's complaint against Defendant Kirk is that he did not ensure that Plaintiff receive appropriate treatment, and did not arrange for him to see a physician when requested.  Hubbard stated in her declaration that Kirk did not medically-treat Plaintiff, but did attempt to discuss his situation with him and educate him on the need to comply with medical orders concerning bed rest and leg/foot elevation. (Id.) This was necessitated by Plaintiff's failure to comply with Hubbard's orders, by attending outside recreation, and not being receptive to the need to keep his foot elevated. (Id.)

After reviewing Plaintiff's medical records, Dr. Stieve concluded that Hubbard properly treated him for chronic swelling and pain and tried various different medications in order to alleviate his symptoms.  (Doc. No. 76-3, p. 1)  According to the medical records, Hubbard tried various plans

and options and properly referred Plaintiff to a specialist.  (Id., p. 2)  She correctly ordered

compression stockings and restrictions from work, sports and yard call. (Id.)  The four-month delay

in the rheumatology appointment did not result in any adverse affect to Plaintiff's health condition

or prognoses, and the rheumatologist did not demonstrate concern over the ankle/foot swelling until

a later appointment in the fall of 2015. (Id.) From May, 2015, through December, 2015, Plaintiff saw

the specialist a few additional times, but did not see Hubbard or Kirk after his transfer to Varner in

September, 2015. (Id.) A second ultrasound conducted by the rheumatologist in November, 2015,

revealed that Plaintiff's lymph nodes in his right groin were enlarged, indicating an assessment of

lymphedema, consistent with the doctor's conclusion in May following Plaintiff's hospitalization.

(Id.) Finally, Dr. Stieve stated that there is no cure for Lymphedema, and that it is properly treated

by wearing compression stockings and using elevation, together with medications to assist with

swelling and related pain.  (Id.)  Dr. Stieve stated that Hubbard's treatment of Plaintiff was

consistent with this treatment, and that the medical care Plaintiff received was appropriate and

satisfactory for his medical conditions.  (Id.)

## 2.      Plaintiff's Response

Plaintiff maintains that Hubbard's failure to diagnose and cure his problem evidences

inadequate medical treatment. He also complains that Defendants only provided portions of his

medical records to him and the Court, and that he was denied proper discovery because he was not

permitted to possess copies of his medical records.[1] He complains Hubbard would not send him to

a physician, even as his conditioned worsened, and would not address the pain and swelling.  He

---

[1]On January 6, 2016, this Court denied Plaintiff's Motion to Compel as moot, based on his review of his medical records on December 23, 2015, and subsequent statement that "he found everything he was looking for."  (Doc. Nos. 69-1, 70)

also complains that the rheumatologist was "forced" on him, as he never complained about joint pain. He states that he was under the medical care of Defendants from July 28, 2014, until September 21, 2015, and that the first time he saw Hubbard was on November 13, 2014. Finally he states that Defendants have provided no evidence to support their statement that the rheumatology appointment was cancelled by UAMS.

### 3.    Defendants' Reply

Defendants state they provided all the relevant medical records concerning Plaintiff's allegations against them in their Motion, and submitted any additional records with the Reply. (Doc. Nos. 81-1, 81-2) However, they maintain that the undisputed medical evidence shows no deliberate indifference by them with respect to their care and treatment of Plaintiff.

### 4.    Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course

of treatment." <u>Long v. Nix</u>, 86 F.3d  761, 765 (8th Cir. 1996).  In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim.  <u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." <u>Dulany</u>, 132 F.3d at 1240.

Having reviewed Plaintiff's medical records, the Court finds that Plaintiff was continuously and diligently treated for his ankle/foot pain and swelling.  Defendant Hubbard may not have immediately determined the actual cause of the swelling and pain, but she continued to try different medications and plans in order to alleviate the swelling and pain.  Although the Court is troubled by the length of time between her consultation request and Plaintiff's actual appointment with the rheumatologist, Plaintiff provides no evidence that Hubbard was responsible for the delay.  In addition, at one point in his response, Plaintiff appears to complain about the rheumatology consult, stating that it was forced on him and that he never complained about joint pain.  (Doc. No. 80, p. 4) Plaintiff's complaints that Hubbard did not act to alleviate his pain also are not supported by the evidence, as she continuously prescribed him Tramadol and extra-strength Tylenol for pain.  In addition, Plaintiff provides no evidence that Defendant Kirk acted with deliberate indifference in accepting Hubbard's assessment and treatment of Plaintiff.

Although Hubbard did not address her treatment of Plaintiff after his initial rheumatology appointment in May, 2015, his medical records show that both she and Defendant Kirk continued

to treat and monitor him in accordance with the directions provided by Dr. McKinney and the rheumatologist. (Doc. No. 76-1, pp. 40-48) It is also of note that the rheumatologist did not actually diagnose or treat Plaintiff's ankle/foot swelling until after a second ultrasound report on November 13, 2015. (Id., p. 50) And, the diagnosis and treatment recommendations for compression stockings and elevation of the affected areas matched the treatment provided by Defendant Hubbard. (Id., p. 52)

At the most, given the delay in the rheumatology appointment, Defendants' treatment of Plaintiff constituted negligence. However, Plaintiff provides no evidence that the delay was the fault of either of the Defendants, or that he suffered injury as a result of the delay. Dr. Stieve stated in his declaration that the delay did not result in any adverse effect to Plaintiff's condition or prognosis, noting that the rheumatologist did not focus on the ankle/foot swelling until the fall of 2015. (Doc. No. 76-3) In addition, Dr. Stieve testified that there is no cure for Plaintiff's condition, and that it is to be treated by wearing compression stockings, elevation, and the use of medications for pain and swelling, all of which were prescribed by Defendant Hubbard. (Id.) As noted in Dulaney, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." 132 F.3d at 1240.

Therefore, the Court finds no dispute of material facts and that as a matter of law Defendants did not act with deliberate indifference to Plaintiff's serious medical needs, and did not violate his Eighth Amendment rights.

**IV.      CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment

(Doc. No. 74) be GRANTED, and Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 4th day of March, 2016.

_____
       JEROME T. KEARNEY
       UNITED STATES MAGISTRATE JUDGE